The bench looks a little different. Judge O'Malley is on the panel this morning and hopefully if things work out, she's going to be participating in real time. But in any event, she has access to the tapes and she will be participating in all the cases we hear today. Ms. Keefe. Thank you, Your Honors. Good morning. May it please the Court, first I'd like to just note that for the sake of brevity of our oral arguments, we've actually conferred with Learned Counsel and we will be submitting on the papers for the 657 and 552 appeals regarding the claim construction issues that we're raising. Let me just start off by telling you that that's nice and that's helpful, but frankly, this is about what we need to hear from you. Absolutely, Your Honor. I will tell you that I don't know if this is good news or bad news, but I think the panel is prepared to focus, if not exclusively, at least predominantly, not on the merits issues of either the appeal or the cross-appeal, but on the question of joinder. Absolutely, Your Honor. And you noted in your reply brief that that's a predicate issue that we have to deal with, so I don't want you to be all nervous like, I've got to get to the merits, whatever. We may very well never get to the merits arguments. And your briefing was very fulsome and we have your briefing to rely on. So, starting with joinder. So, typically, Your Honor, I wouldn't do that until the rebuttal. Would you like me to just address it from the very beginning? In other words, that's what this argument is. Perfect. Okay. So, turning to joinder, I guess my first question is, where's the PTO? So, right now, Your Honor, the PTAB has issued a precedential... No, I know, but where are they in this case? Because maybe I'm wrong. I don't know that there's anything in writing. But my historical experience since the AIA passed was they would intervene in two circumstances. One, if you weren't here, obviously you are. But two, if there were questions about interpretation of the AIA or those kinds of practices and policies. So, I don't know if you've talked to the PTO. I just really don't understand why they haven't intervened because there's a very important question of joinder here, as you said. And now that they've got a precedential opinion, they obviously have something different to say, perhaps, than they said in NIDAC. So, do you have any idea... Would your expectation have been that they would have tried to intervene in this case, given the joinder issue? Given the... Your Honor, no. I did not believe that they would have intervened in this case, given the joinder issue, given that they came out with the precedential opinion in propanent. And I think what... If it were me, I would say that they think that propanent set down a precedential opinion of an administrative edict. In other words, the patent office... I know, but if you were here, if you were the patent office and you were here, we don't... And we haven't spoken definitively, I don't think necessarily, on whether the extent to which we give any difference at all, let alone substantial Chevron difference, which you've called for in your 28-J letter. Correct. So, wouldn't you think the patent office should and would be here? I mean, are you making an assumption that we're going to accept that as a Chevron difference? Do you think they're making that assumption, that now that they've spoken in a precedential opinion, end of story? I am making that assumption that that's what they're thinking. I don't at all have any inkling as to what Your Honors are thinking. We have actually argued that, in fact, we believe that the Federal Circuit should give Chevron deference to the propanent decision because it is a precedential opinion. It's the first that the patent office... No, I understand, and in fact, it's very curious because in your 28-J letter, in the final paragraph, you say, quote, The PTO's precedential statutory interpretation of 315C, provided after notice, public comment, and hearing, is entitled to Chevron deference. Do you think that because amicus briefs were invited in a precedential opinion, that necessarily equates with notice and comment rulemaking? I don't think they're exactly the same, Your Honors. Certainly, they're not. They're not a fulsome rulemaking process with everyone being invited, but they do grant the patent office the public's input. There were actually six separate amicus from individuals as well as corporations and bodies like the AIPLA. Let's see if I've read all of that input. I've read all of those amicus briefs. I've gone through that whole thing. There is absolutely no legal basis for that precedential opinion to be considered compliance with the Administrative Procedure Act. The Administrative Procedure Act very clearly spells out what needs to be done for a regulation. First of all, it has to come from the official leadership of the organization, and you can argue he was involved in this panel. But secondly, you have to file in the Federal Register. You have to go through certain steps. You have to give public notice in a particular kind. None of that was done, so let me clarify for your thinking and anybody else who thinks otherwise. They can do all the precedential opinions they want, and they can advertise them any way they want, and it will never qualify under the Administrative Procedure Act as a proper notice and procedure notice in process under the APA. So they can't get Chevron deference in any sense. So you should put that out of your mind and move on from there. Let me just add to that, and we'll all figure it out. But I just want to ask you, leaving aside the APA issue, isn't it just a matter – and we've got Kaiser now, and granted Kaiser dealt with our deference and not Chevron deference, but isn't what we're doing here in terms of construing 315B and C just a matter of deciding which statutory interpretation is the most reasonable rather than a matter of deference? I mean, Kaiser lists factors when deference is due, and it seems to me those factors are nonexistent here. Well, what I think is appropriate here, Your Honor – I understand your point – but what I think is most appropriate here, Your Honor, is that this statute specifically gives discretion to the commissioner to make these determinations. And so as we see – And the director. The director. I apologize. The director is given the discretion to decide whether or not to allow these joinders, and therefore he's being given discretion to interpret 315. And as we see in Meade and in the Chevron case itself, when Congress is silent or in fact actually passes the imprimatur on to the administrative agency, that's when Chevron deference actually applies the most. I understand your point, and I take your point. But there's an issue that we have to get to in order to put his deference. He's got deference under the statute, no doubt. The question is what the extent of the deference is. And a predicate for that is to construe the statute because – I mean, we're talking about whether he has the discretion to join time-barred parties or persons versus time-barred claims, because that's really the heart of this dispute, right? I mean, the other side may say the issue is whether or not you can join the same party. But my view of it, at least, is whether it's the same party or a different party, the real heart of the issue and the import for what we do here is whether or not that time – otherwise time-barred party who the director may have the discretion to join is allowed to bring in issues that aren't covered by the original petition. That seems to me to be a very important issue. We've spoken at a concurrence in NIDAC. I think Click to Call kind of referenced that. So I agree there's discretion, but how do you get past the first issue, which is I think a more issue for us than the directors, this clear statutory interpretation? Why should we rejoin your party to be anything more than part of it as opposed to whether you can bring in your issues with that? And so for that, Your Honor, I think we also have to look to the statute itself. And the statute itself, if what Your Honor is saying is that it's absolutely limited to only the claims that were in the original petition, nothing more, never, only those claims slash only those issues, then the rest of the statute wouldn't also require that the issues presented otherwise meet the AIA standard, otherwise would be eligible for the petition. You say that wouldn't have any meaning? Of course it would because it limits who can be a party. They don't want just Joe and Mary from Lafayette Park to come in and join this party. They're putting a limit on who can be joined at the party. And it can't be somebody, and that's what these limitations are about. They're talking about, they are limiting who can be joined at the party, but that doesn't necessarily answer the question about whether the issues raised in those other petitions, if they're otherwise time-barred, are necessarily allowed to come in. Do you understand the point I'm making? I absolutely understand Your Honor's question, and unfortunately I just disagree. And the reason I disagree is because if you look to, for example, Senator Kile's statements about the fact that they anticipated that other issues may arise, that there would be other materials presented, and we cite that in our brief. It's actually discussed at length in the proponent decision as well. They all point to the section of 315 that talks about not only can any person, so unfortunately it can be someone from Walnut Creek or Lafayette who actually comes in, any person can actually petition for a joinder, but then the director has to receive the preliminary response and then determine whether that petition warrants institution under 314. Excuse me, Ms. Keith. Yes. It does not say any person. It says any person who properly files a petition under Section 311. Correct. In order to properly file a petition under Section 311, you have to meet a whole bunch of requirements, including, as you know, not being the patent owner and a variety of other things. So it's not anybody can walk in. Let me, if I may, pick up with the point that Chief Judge Post was working from. Let's assume, hypothetically, the worst case for you. Let's assume, hypothetically, that the statute means exactly what it says. And what it says is that an inter-party review may not be instituted if the petition requesting the proceeding filed more than one year after the date on which the petitioner, et cetera, is served with a complaint alleging infringement of the patent. And that's a bar that will bar any petition by the same party after the one-year period. That's what the statute says. Let's assume we think that's what the statute says. This is a hypothetical for you. I know your position. I've read all those arguments that appear, and I've even read the argument in the other cases that have been before the PPI. So we're not going to persuade you, but I'm not sure you're going to persuade us. So let's proceed with this hypothetical, the worst case. Let me go to your factual case. You tell us, this is what you've told us. You said the complaint was filed in the Western District of North Carolina in 2015, alleging infringement of four patents, 830 claims in those four patents. But, by the way, I'll give you a chance to quarrel with the facts later. Eight hundred and thirty claims, not specified. Then you tried to get a dismissal, but the court never dealt with it. Eventually, there was a transfer in 2016 to the Northern District of California, and that court didn't deal with your dismissal motion either, but it did set a management conference for four months after the one-year bar expired. Well, there you're looking at that. And let's assume that you read the statute the way I'm proposing to you at the moment we'll read it, which is you have no way of filing a second petition after the statute is run, and you can't join yourself. It's grammatically impossible for someone to join themselves unless they happen to be dead. Now, you're facing a deadline, and you have no way to file those follow-on petitions. What would you do? How would you deal with that problem creatively if you were faced with it? Help me. That's what's puzzling me is how do we get someone like you out of that dilemma under the worst-case reading of the statute? The problem here, Your Honor, was we were creative. We actually filed an emergency motion with the district court. No, you absolutely acted responsibly, and you also recognized that you had a potential peril here. Yes, we did. Without doing that. Yes. I'm not quarreling with what you did.  Instead of having the propact opinion and all the rest of that, if you knew in advance you could not file a late petition, what would you have done as that time bar began to get near you? What would you do? What we did, Your Honor, is what we did because we weren't assured. You asked the court for an expedited hearing. It never happened. Correct. Now what? And then we did, unfortunately, Your Honor, we did the only thing that was available to us, given that it was physically impossible. I guess it's not impossible. It was physically improbable, both cost prohibitively and logistically. And I'm not sure what the Patent Office would have done if I had filed, call it 30 petitions, to try to accommodate all of the claims that were at issue in the case. I don't think it was practicable. But we recognize 830 potential claims in over four patents is the extreme. Correct, Your Honor. But I think petitioners face this all the time, right? I mean, rarely do complaints, in the first instance at least, do anything other than have some ambiguity in terms of which actual claims were asserted. But normally, thank goodness, most of the time we're dealing only with a patent because no matter how you read the statutory language, it says I'm a patent. They can't bring in another patent. Correct. So they go ahead and they, unless they can get an answer from the district court, they file petitions that are over-inclusive, possibly. And that happens normally. I mean, sometimes people will file complaints until they have discovery. That's why we have lots of amendments to complaints, adding claims, which can always happen after the one-year time. Absolutely, Your Honor. And that's the system we're dealing with. I mean, I respect that. I think, I don't want to read into it, but I'm assuming Director Iancu and the rest of the people on this POP thing recognize that there should be what he calls a very limited exception for that circumstance. But if we can't read it into the statute, then you'll do it. That's what I think in a normal circumstance most petitioners already do. They're not faced with 830 claims. They might be faced with 20 claims versus three, and they go ahead and protect themselves. That's what lawyers do. What would preclude you from within that one-year period? Here's what you did. You filed a motion to expedite. It was denied. You then petitioned within the one-year period. What you guessed were the relevant claims that you thought were representative of the 245 and 657 patents, right? Correct, Your Honor. And the clock kept ticking. Understood, Your Honor. Now, if you were sitting there today and you knew that clock was going to cut you off, what would you next do? I'm not sure, honestly, Your Honor, that there was anything else I could have done. The only two options are file on 830 claims or make an election. Why can't you do that? Why can't you file on 830 claims by a petition? I'm just asking. Why can't you file a petition and just list the numbers of all those claims, which is all you need to do to get the petition in by the deadline? I'm just asking because I want to understand. In your papers you said, well, that's not fair to the PTO. That's not your problem. You're not the PTO. How do you protect yourself under these circumstances? So, Your Honor, if this court were to find that simply listing the other claims was enough, we would do that. But the Patent Office has rejected all petitions that don't give full evidence to every claim that's in the petition. It's not good enough to say, here's Exemplary Claim 1, and I want you to attach all of that same analysis to everything else. There are page limits and costs. Each petition costs at least $30,000 just to file. And if you can only get within the 40 to 50 page limit, it's a word limit, not a page limit, you can't possibly even print out what the claims are. Well, you can file multiple petitions. You can, Your Honor. But if you can imagine, I think at this point when we calculated it, it would have been something on the order of 30 petitions in order to accommodate everything. Firstly, this is obviously the extreme case. Completely. And one would hope that even though policy, if it was just policy, it would dictate probably a win for you. But on the other hand, policy would dictate that the patent owner has some skin in the game here too. It can't possibly be to their advantage if they're only claiming to assert a dozen claims at the end of the day in their complaint. It can't be to their advantage. They're against Facebook. They're not against some little guy. So you have the wherewithal, the bandwidth, presumably, to force their hand. The patent owner, it's not in his interest to have you file IPRs on all of his patents and all of his claims. So he's got an incentive to try to figure it out sooner rather than later. Because if it's realistic that you are going to file on all of them, then he is risking unnecessarily all of his claims, and particularly under SAS where they can make an institution decision and pick out three little claims and we're done. So he's got a risk. It's not some patent owner, I've got nothing to lose, I'm just going to try to harass the petitioner. There's something to lose at the other end. People will be reasonable. I disagree, Your Honor. There's nothing to lose for a patent owner. What a patent owner does is they – All of his claims and all of his patents are now going to be in the IPR process. Because all he has to do is say, oh, and now I'm not going to assert those in court and I'm not worried about those anymore. And meanwhile, he has drug the defendant to spend hundreds of thousands of dollars. That's true. He's not going to assert them in this. But he's still – what he's done is jeopardize his entire portfolio unnecessarily. And to me, there's possibly a cost to that or a disincentive to just willy-nilly do that if there's no reason. Obviously, there could be a reason in some circumstances. Without discovery, he could not really know which of those claims are appropriate, and that's fair enough, right? But, Your Honor, that risk exists the minute they file the lawsuit. Those claims are all potentially going to be invalidated the minute they file a lawsuit without telling us what claims there are. It has nothing to do with, oh, and now the disincentive is they could all be invalidated. That exists whether or not you go to the PTAB. So there is no disincentive for patent owners. In fact, the ProPanit decision, the director specifically talks about the gamesmanship that is afforded to a patent owner who is able to say, here is my pile of 300, 800, however many claims it is, and I refuse to tell you what it is until after the bar date is passed because I know it's either going to be cost prohibitive to you, it's going to be man hours prohibitive to you, or something else, so I'll end up with some claims that are free and clear because you can't possibly file on them all. It puts the entire burden on the defendant who has no way of knowing. It then puts the entire burden on the patent office, which I know you said it's their problem, not mine, but it does still outweigh all of the problems. They're all on the patent office and the people defending themselves from spurious claims. You may have a very good case for a better statute, and I would certainly support that personally, but yours is remarkably the worst possible case of this fact pattern that anyone could think of. 800 and 30 claims and two judges who didn't pay attention. Come back to that point for a minute. Clearly the problem that's causing the whole problem is the district judges who failed to require them to produce the information that you kept asking for, and you kept asking for it. This is unique, though. I'm not sure the same result would have come if there hadn't been a change in venue. It's not your fault. It was double. The problem was double for the trial judges because no one trial judge ever got a hold of the case. It kept moving around on them. You couldn't write a script that was worse than this one for challenging the sensibility of this patent, and we recognize that. I suppose at some point you might have said to your client, we're screwed, go to the bankruptcy court, but there's no reason for you to have done that. There has to be a remedy somewhere in the system, which is what we have to wrestle with. What is the right remedy for someone caught in this? Part of the problem is this case will probably never come up again in the history of the United States. You would really have to imagine the possibility of, first, the transfer, second, the inordinately large number of claims. They ought to do something about that. Then the trial judges dropping the ball, which admittedly happened, and here you are and the clock runs against you, and here we've got this particular statute. You couldn't ask for a worse case than the one you happen to have. Now, the chief judge suggests one option for you, which would have been to somehow file any number of petitions, whatever you decide to do, but you've got to get in before the deadline, and you're pointing out why practically that's not a good alternative for you. I don't know whether going to the patent owner and saying I'm going to file everything against you and tie you up for the next 50 years unless you contract with me to agree that you're not going to add new claims. I don't know if that would work. Who knows? It would not, Your Honor. Probably in this set of circumstances, probably not. I've tried it in other circumstances and it doesn't work, Your Honor. You have tried it? I have tried it in other circumstances, Your Honor. Okay, that's helpful for us to know. It does not work. The patent owner says, go for it. So let's assume hypothetically that the statute doesn't provide a way out. What do you suggest we do? The first thing I would do, and I know Your Honor doesn't agree, but I would urge you to re-look at how the director analyzed the difference of the word person between 311 and 315 because I think that's very helpful. But putting all that aside and understanding that Your Honor is asking me, assuming that there is an absolute time bar and no ability to add claims after the time bar, I would request that the court, at least in its opinion, indicate strongly urging, I know you can't order it per se, but urging district courts to implement claim limitations that no case have more than X number of claims before the statutory period so that judges know down below how you feel about that type of gamesmanship. At a minimum, that would help us as defendants when we go in front of judges asking for early claim limitation, asking for courts to, at a minimum, get infringement contentions early in the case to what claims are going to be involved so that we can approach the PTABs in a timely manner with only the claims that are at issue. And I would beg the court to at least do that. I appreciate your input. But just back to the statute, maybe you can give me some help because the option you left out was too bad, so sad. Go to Congress and get them to make an amendment. My reading of the statute, for whatever it's worth, I think I agree with Judge Flager that the language does not get you where you need to go. But the real rub, the cause of the problem is the language that says with the complaint alleging infringement of the patent. Because we all know that doesn't mean anything. I don't know, does this patent act refer to infringement of a patent? You infringe claims and not the patent. If the language there were complaint alleging infringement of the claim, he would have an argument that your one-year clock corresponds to the claims that are alleged in the complaint. And that obviates the problem of amending complaints and all of that. So if you're going to seek an amendment of the statute, you might want to, I don't know, maybe it's subject, maybe you could make an argument that infringement of the patent can't possibly mean infringement of the patent because that doesn't make any sense. So it must mean infringement of the claims, and if it means infringement of the claims and it talks about the complaints alleging infringement of claims, then your clock only starts running with respect to those claims that are alleged. Just a thought. Your Honor just made the argument I was going to say about patent versus claim and you can't infringe, so you did exactly what I was going to do. Yes, but the problem is the language, and Congress knew how to say it because helpful for petitioners in the estoppel provisions that follow under E, they do refer to claims, not infringement of the patent. They feel it's infringement of the claims. Exactly, and, Your Honor, that's a bad statutory situation for you because Congress knew how to say claims and they didn't. But Congress also knew specifically how to release the time bar, and it said that the time bar did not apply to proper petitions. Where does it say that? It says in the section on joinder that says time bar. Yes, time bar petitions under 311. Yes, exactly, Your Honor. So as long as they're proper under 311, they're not time barred. On this case, your argument, if we're construing the end of B, which is the whole exception, being requests for joinder. Correct. So that means a request for a joinder and not everything, all the issues in a petition, doesn't get you over our reading of the word party and persons, joinder of party and persons, not joinder of inter-party proceedings. So you're still – I understand your argument on that, but I still – And I would still urge – sorry, Your Honor. One possible solution for some of this, at least, is for the patent office to recognize the difference between joinder and consolidation, which are for other matters involving the patent, something like an interference or another ex parte can all be consolidated. No, no, no. That's different. A director may determine the manner in which the inter-party's review or other proceeding or matter may proceed, including providing for stay, transfer, consolidation, or termination of any such matter or proceeding. Correct. And that gives the director very broad power to consolidate. Now, that would suggest that someone could come in, if they came in within the time bar, of course, and file a petition and get the substance of the petition consolidated with the original petition. But that's not joinder. That's consolidation. Correct, Your Honor. So the director needs to get his act together to make sure that he understands which way you've got to go to get the substantive material across the boundary, and that's not joinder. Joinder is joinder of persons. But the problem here, Your Honor, is that consolidation doesn't affect, doesn't say, and is not subject to the time bar, whereas joinder does. It's not subject to the time bar. You're absolutely right. The only way you get the only exclusion is for requests for joinder. Correct, Your Honor. And so that's why the consolidation doesn't actually happen. But it still doesn't clarify that you're joining something other than party. And I think here, Your Honor, that's why I agree. Remember, the time bar doesn't bar consolidation. Correct, Your Honor. And it doesn't bar joinder. That can be done 10 years later if they want to. It only bars the filing of the petition that is the basis to be consolidated or joined. So the joinder has to happen within a month. If Your Honor is asking the question that the petition has to be filed within a month, that is the only way you can get a joinder. You can't have a joinder, say, 10 years later. It's only within that statutory period of 30 days after the institution decision. Right. That's so that the patent office can say, I've got this issue in front of me. I'm getting ready to dive in whole hog into the rest of it. So I want everything in that's going to be in. But, again, I would urge Your Honors to look at the distinction that is drawn in ProPanit between person and in 311, which says any person other than the patent owner, and 315, which says any person and does not carve anything out. If Congress had intended to carve out the petitioner, it could have. The same way in 311 it says any person can bring an IPR other than the patent owner, it does not do that in 315. It doesn't say any person may apply for joinder other than the petitioner. So I would put those two. No, no, no. But my problem is even if we agree entirely with you that it can be the same party, as you can tell from our questions, the rub for us is not whether or not you can join the same party. It's what is joined, whether it's anything beyond the party itself, whether it includes the claim in the other petition. And I would urge Your Honors to, again, look to Senator Kyle's comments,  With respect to Senator Kyle who constantly gets cited to us, his views are not the law. The law is what's written in the statute. Let's face it, we have to deal with the statute. I agree. The only other thing I would add for Your Honors, though, is that there is a way out of this for this case. And the way out of this for this case is waiver. This argument was never made below by the patent owner. This is in our briefing. The patent owner actually asked for the patent office to exercise its discretion and to deny joinder under 315. They acknowledged in that statement that the patent office had discretion. Only here on appeal, for the first time, do they argue that the patent office did not have discretion. Your Honors could find that they waived the argument of whether or not the patent office could act by not using that argument down below. That's a very good point, and we will make a point of pursuing that with your colleagues there. Because we'd like to come out with a result in this case that makes sense. But at the same time, we have to come out with an understanding of the statute that makes sense. By the way, the statute works beautifully for the Me Too people. Correct, Your Honor. That's what it's designed to do, apparently. I don't know whether Congress went through all these alternative scenarios and figured out, let's deal with the Me Too people, and the rest of them got to worry about their own problems. Or the district courts will worry about it, or the Court of Appeals will unscramble it when the time comes. But it's clearly the statute works for Me Too's. I agree with that, Your Honor. What it doesn't work for is people who are game, the way you people were, whether intentionally or not. I'm not going to offer an opinion at the moment. But you ended up having changes in what claims they were going to pursue against you without an opportunity to file a petition on those claims. Now, we have to keep in mind that you can still go before the district court and litigate the validity of all of the claims that are being pursued against you. You don't have to do it in the PTO. Correct, Your Honor. It's nice to do it in the PTO, and we're all in favor of the AIA. At least, I shouldn't speak for others. I'm in favor very much of the AIA's circumstance. I always wanted the agency to have a way to clean up its act, and that's what we have. But it may be under some circumstances it just isn't available. I don't know. That's what we're trying to kind of think through. Is this a case where your only remedy is to litigate the validity of these claims in the district court? You still can, can't you? It honestly depends on the outcome here, Your Honor, because of the stockhold provisions and what have you. So if Joinder does not apply, then we can litigate those claims at the district court because a stockhold will not apply. But we will always have the specter of – I know we've held you here for a long time, and you've been very helpful, and it's appreciated. But two little questions. Sure, Your Honor. Save my clerk some time. Thank you, Your Honor. You seem to notice that off the top of your head. My vague recollection was the Kyle legislative history. I thought that was what Senator Kyle was arguing. There ought to be a one-year time bar versus a six-month time bar to make sure that we can cover it. So I'm not sure – am I right about that or wrong about that? So Your Honor's right in that that was what the – that's how the conversation started. That's the early part. But then by the time it arrived to – and with Joinder, we're talking about adding additional issues. So he is directly addressing the issue of Joinder, including the possibility of other issues. But that wasn't only in the context of saying that's why we need to extend it for a year and not for six months. That's correct, Your Honor. Okay. One other quick question. Am I right here that at the end of the day, if we were to decide that Joinder was not permitted in this circumstance, both sides derive a little bit of a benefit because they've got their cross-appeal cases. So some of – a few – as I try to tabulate all of these millions of claims that are out here, it seems to me that a few of the cases they lost on their cross-appeal, a few of those claims would be saved if they couldn't have been joined. But I think some of the claims in your appeal is where the board found that were not obvious. Correct. I think that you would sort of benefit by getting rid of the board's decision with respect to those claims. Theoretically, Your Honor, but I would argue that given the way that the case is working out down below, the ones that matter are the 245, and that's why all of the ink was spilled on the 245 in the briefing. And that's why we're focusing on that. That's what we won't give you a chance to focus on, but we will. And I understand that, Your Honor. I absolutely understand that. And I actually appreciate Your Honor's insights and all of your questions. I think the only other thing that I would urge is that when I was rereading Mead and the name that I can never remember how to pronounce that starts with a P that the Federal Circuit actually wrote an opinion on, let me get you the title. When I reread the Pescuera, the Chevron, and the Mead decisions this morning, one of the things that stood out was that all of the judges in all of those panels contemplated the idea that sometimes Congress is silent because it actually wants the agency to figure out a way to make this work. And here, we do have the agency figuring out a way to make that work. And whether Your Honors give it Chevron deference, which I still think it should have, or not, it still shows that the agency is trying to figure out a way to make an ambiguous statute work for everyone involved, including very limited exceptions like the case that we have here. Let me make one point clear, at least from my viewpoint. Please, Your Honor. The statute is not ambiguous. There's nothing ambiguous about this statute. It requires construction. We have to say what it means. But there's nothing ambiguous about the statute. It's straightforward. It says exactly what it means. Now, whether that's a good idea or not is a whole other issue. I think I've gathered from this, from your viewpoint, at least in terms of the outcome, there's a workaround for you, which is the waiver issue. Correct, Your Honor. We will take that up with the colleague. Another possible workaround, which I'm kind of attracted to, is to construe the term patent in 315B to be a clerical error. And what they meant to say was claims. The beauty of that would be it would end the possibility of this kind of litigation ever occurring again. Your Honor, I would be happy with that. But that wouldn't solve your problem because you still came in after the statute bar. It may not solve the problem here, but it would give me comfort in being able to advise my clients in the future. Yeah, which is part of what our responsibility. This case is several layers. Understood, Your Honor. It's your problem on the merits and what to do about others whose cases are going to be affected by what we do to that statute. Correct, Your Honor. Thank you for your remarks. Thank you, Your Honors. And we'll restore a few minutes of rebuttal from you. Okay, your turn. Thank you. Good morning. Good morning. May it please the Court. Your case rests on waiver. Why don't you go right to it. Your Honor, I will address waiver. With regard to waiver, the first thing is that this issue was raised by a concurring judge in the institution decision. Petitioner seems to be saying that it was waived somehow at the institution phase by failing to make an argument of preliminary response. Preliminary responses aren't even required. So I don't see how there could have been a waiver by not raising it in a preliminary response. Now, after institution, we appealed to the Federal Circuit. We filed a mandamus saying this is improper under the reading of the statute. We attached the opinion, the concurring opinion, of the judges at the Patent Office, and the Federal Circuit told us you'll have your chance on appeal. And so then we took that issue, which was in the record in the case, as us having gone to the Federal Circuit mandamus-ing on this issue as being in the record in this case. And that's how we arrived here, and that's why we don't think it's waived. It seems like Petitioner is arguing that the argument was waived because of a failure to address it at the preliminary response phase, which I don't see how that could be a waiver since we don't even need to file one. Can I – I don't know if you have anything to add, whether or not you're surprised or not clear on why the PTO isn't here as an intervener given that we've got not just a statutory provision at the AIA, but an intervening, so to speak, precedential opinion. Do you have any insight into that? Your Honor, I don't know why the Patent Office isn't here or why they even would be here. Well, because they presumably – I mean, all your friends left to defending that we ought to give Chevron deference to a precedential opinion of theirs. I don't think our court has necessarily definitively decided what kind of deference, if any, we give to precedential opinions. Don't you think that's kind of significant for that? Your Honor, it may be significant. From my perspective of representing my clients, it had certain significance. Whether it has greater significance to the patent community and to the Patent Office, it may. But could I ask you – there's another element of surprise in this case in terms of who didn't say what when, and that is your friend, very promptly after this precedential opinion in March, sends us a 28-J letter saying, okay, now we've got a precedential opinion, you ought to give Chevron deference, yada-da, here's what they've decided. In your briefing initially, you kind of don't – your argument for all these board decisions that go against you is who cares? They're non-correct opinions. The board has not yet spoken out in a precedential way. You didn't respond to their 28-J letter. Why not? I mean, do you agree with it? I don't necessarily agree with it, Your Honor, but – Well, don't necessarily – do you agree that we should give Chevron deference to board precedential opinion? Absolutely not, Your Honor. Okay, so you disagree with it. I disagree with it, Your Honor. Okay, why didn't you respond? I mean, we had a lot of 28-Js, and there's a little abuse in the proceeding with people overdoing it. But in this case, they say something about a precedential opinion. The precedential opinion dislodges some of your earlier arguments because you didn't know there was an issue in precedential opinion. Why did you not come and give us some help on what we do with this? Your Honor, I think it was more towards the first point you had made, which was in terms of submitting things to the court without the authority to do so. I don't know that we thought we had that opportunity. If there's an intervening – I mean, this is the quintessential 28-J circumstance, right? They took advantage of it. You don't think they're filing a 28-J letter on this precedential opinion that's improper, right? It's exactly the kind of thing that they should do, right? I haven't considered that, but it sounds like the court feels it was. Okay. So we've got a circumstance, if we construe the language of the statute about infringement of a patent and not infringement of the claims, where they were stuck, in your view, with filing an IPR dealing with 830 claims. How can that be what Congress intended in terms of the system if, at the end of the day, you're going to be forced to tear down that to a dust? Your Honor, I can tell you that there is another layer to this iceberg that isn't even before this court, which is that when the petitions were filed and when the case was filed, it was filed against Windy City. It was filed by Windy City against Facebook and against Microsoft. Microsoft and Facebook, between the two of them, filed 12 IPRs against the patenteer. Microsoft managed to file IPRs against all the claims that it wanted to. Managed to what? File IPRs against all the claims that it wanted to. How do we know? I mean, they were in this – I don't know about that, but what it wanted to – that has no meaning for me. If I'm a responsible lawyer for a petitioner and I know my one-year clock is going to run, they were absolutely right. They're begging the district court to come and tell us what claims they're going to issue because we don't want to forfeit our right to file an IPR. Is that not correct? That's – Were they not at risk without filing an IPR here on 830 claims? Your Honor, there are two patents that are primarily at issue here. One is the 245 patent. The other is the 657 patent. The 657 patent is the one with many, many claims. And that one, if you're asking for how someone can address that, Microsoft filed an IPR on the same day that Facebook did in essentially the same case for the same district court and used a representative claim, and they got an institution. And so that would be a mechanism to accomplish that. What's the status of that case? They settled, Your Honor. Okay. They settled. But you file a complaint that says Facebook – accuses Facebook of meeting the claims of the patents in suit, and you don't identify which ones. If you're representing the defendant in this kind of complaint, do you not feel like you have to preserve your right to file an IPR involving all of the claims of the patents in suit? Your Honor, I think they would have to preserve their rights. Additionally, with regard to the 245 patent – How can that be right, though? It's a policy matter. Okay, maybe we don't do policy, but don't you appreciate and understand why the director and this presidential board felt that there had to be at least a limited exception to the rule to prevent that unnecessary use of resources by them, by you, by the Patent Office to get IPRs involving 830 claims when that's ultimately absolutely not necessary? Your Honor, there is another – if we're looking at 830 claims across four patents, which is the case here, the situation would be the same if it were 15 claims per patent, but there were just more patents in the case. There would still be a deadline. Facebook and Microsoft would have still had to do the work to get the IPRs filed by the deadline. And with regard to the 245 patent, which is, as my colleague had expressed, one of the – the patent that everyone was prepared to really address today on the merits, that patent only had 55 claims. And there was no reason why, specifically for one patent with 55 claims, why Facebook couldn't file an IPR with 55 claims. Many others have done it. Microsoft filed IPRs against many more than 55 claims in the same case. Okay, let me give you a hypothetical. Let's assume you filed this complaint and you identified six claims across the board, or six claims for each patent. So they go in and they file their IPRs and they're covered. And then 366 days later, you amend your complaint to add six more claims. Under your view of the statute, would they be time-barred in filing an IPR over those newly amended – the new claims that were added in on day 366? That's a yes or no. Yes. Yes, they're time-barred. They're time-barred. How can that be right? Your Honor – Do you think the statute differentiates? Like we wanted to give – clearly the statute wanted to give petitioners an alternative role with the PTO. So they were saying, okay, but yeah, if somebody amends their claim one year later, they're out of the ballgame? Your Honor, in those cases, as Your Honor has both expressed, this is a situation that is not the norm in terms of the transfer and then the delay in calculation. But people amend complaints all the time. Yes, Your Honor, but generally not to allege additional claims because that's done in contention. The hypothetical is a hypothetical. It's designed to focus on a particular problem. And the question is, is that problem built into this system? And if that problem is built into the system, could Congress have ever intended the problem to be there with no solution? It doesn't make any sense because it was clear what Congress wants to do is to permit a defendant who's claimed against in a lawsuit to be able to go to the PTAB and get what they consider to be quicker and better results than they do by litigating it in the district courts on the validity question and the prior art stuff and all the rest of that. And all of a sudden, there's this one set of situations where the patent owner can make a change in the claims after the one-year statute is run. It's just the way it works out. And your answer is, too bad. You lose the AIA. Now, the question is, first of all, does that make any sense? But more importantly, is that what the statute requires? The statute explicitly requires for a patent, filing an IPR against – a claim of a patent infringement against a patent. No, it says the complaint. Sorry. What does it mean, a complaint alleging infringement of the patent? How do you infringe a patent? Your Honor, there's no requirement in district court that you allege all of the claims that you're going to pursue in that court in your complaint. Usually, courts – California, other courts – have contention processes whereby you name the claims you're going to pursue in that case at a certain point. And so there's nothing – But you talk about – I mean, I don't know. Maybe you're right, but it seems to me even in this case, you just listed the patents. You didn't identify any claims, but you certainly said meet the claims of the patent in suit. You didn't say infringe the patent. Your Honor, I think at that point that might be some kind of Iqbal Fwambli issue about pleading for the – how you have to construct your pleading. But my understanding is that you allege infringement of claims of a patent. That's exactly right. No, I agree. So we all agree you allege infringement of claims of the patent. Can you allege infringement of the patent? Is there such a thing? Yes, Your Honor. That's why it's called patent infringement and not patent claim infringement, the action itself. And let me ask, in the amendments – so even if you were to allege hypothetically, if there's a complaint and they say we've alleged claims one, two, and three, if your client is a potential petitioner or defendant, you're going to have to tell your client you better go file an IPR not just on the claims of the patent that's been alleged. But on all of the claims of the patent that's been alleged because they will have free reign to file amendments after the one-year passes, right? That's correct, Your Honor, and that's what I've advised my clients. And that's what – in your experience, that's what petitioners are doing now. They're filing IPRs on all of the claims of a patent even if only certain claims have been identified. That's right, and that's what Microsoft did in this exact case. Isn't there a general rule – I didn't think to run this down, but I thought there was a general pleading rule that requires that pleadings be specific about the cause of action. That's correct, Your Honor. And your cause of action was breach of certain claims, but you never were infringement of certain claims, but you never said what those claims were. That is an issue for the district court and not for the… Wasn't your pleading subject to summary dismissal? Your Honor, I don't know. I have to admit that I'm not the counsel in the district court in this case, so I don't know the full history of that. But I would imagine that in a case we're talking hypothetically that those concerns are addressed at the dismissal stage by filing a motion to dismiss under Rule 12, alleging that the complaint fails to state a claim under Iqbal or Twombly. Right. That's a better disposition. You heard me recite what I understood from sorting through all these briefs, what seems to be the history of this case. You don't disagree with that history as I recited it, do you? As you have recited it, I did not hear any inaccuracies, but I would defer to the record. Can I – just since you didn't respond to the 28J, can you give us your view of the law in terms of what deference, if any, is owed to the Patent Office in light of a precedential? Your Honor, it's our position that it's – the Chevron analysis in terms of whether it should be given Chevron deference, as Your Honors have stated earlier today, that is only given when the statute has some ambiguity. And our reading of the statute, we don't see anything other than the plain reading of the statute, and as Your Honors have said, it may need to be construed. But there's nothing ambiguous about the statute, and statutory interpretation, that's something well within purview of this court. And the Patent Office can't rewrite a statute even if it designates the opinion as precedential. The statute is the statute. Perhaps someone needs to take that up with Congress. I would say one thing about a mechanism if this issue were not to be reached in this case, which is that we've only raised this issue as a cross-appeal issue, and specifically with regard to the 245 patent. In the alternative, our position is still that the merits of the petition in that case were correct. The Patent Office came to the correct decision. The claims are not unpatentable. That was a final written decision, and that this issue need not even be reached. But if it were to be reached because of some issue with regard to the Patent Office's analysis of invalidity, then we would get to this issue. You went a little fast there. Let me be sure I follow you. If we hold the worst case, which I started with Ms. Keith about, that the follow-on petitions by Facebook coming after the statutory period had run in 2016, if we hold that all those follow-on petitions were invalid, your win under those follow-on petitions would be wiped out as well as your losses, wouldn't they? You can't have it both ways. I don't think we presently have a loss under that. So it would only be a loss if this court were to reverse the PTAB. So we're in a winning disposition there, which is why we didn't do it. I think I understand what you're saying, but I have a different kind of a question with that. As I mentioned to Ms. Keith, some of the claims that they lost on that is subject to their appeal were the new stuff that came in under Joyner. Some of your claims in your cross-appeal was the new stuff. So I understand. You're saying if you won and we reversed the board on all of your cross-appeal stuff, including the new stuff, that would help the Joyners. Is that what you were saying? What I was saying, Your Honor, with regard to the 245 – I just want to talk about the 245 patent. The remainder of the patents, we were willing to submit on the briefing. For the 245 patent, which is the only one currently alive in district court right now, all the other patents have been not elected to go forward to trial. So with regard to the 245 patent, the patent owner has won all of the claims at issue there. The Patent Office found that every claim petitioned was not obvious, non-obviousness for all of those claims. We won both the claims in the original petition as well as the follow-on petition. So Facebook has appealed that decision and argues that the Patent Office got it wrong, which we disagree with. We only mentioned the statutory issue of could we even be here – should we even be here at all in response to their argument that they should – that Your Honor should find the patent to be obvious. And so our argument is only – they're here asking this court to overturn the Patent Office's finding of non-obviousness, to find the patent as obvious. And so our response to that is if we have to reach that issue and you're not going to disagree with the Patent Office's obviousness decisions, we have to go into all the merits of should we even have been here to begin with, which raises the statutory question. I think I know what you're saying, but I think you're wrong because we looked at this initially because we thought there was a waiver issue because somewhere in your patent you talk about in your summary of argument you use it as an alternative with respect to Facebook, which seems to be what you're saying here, that it's their appeal that you think. But then in the argument section, you have – you cite, actually, the IPRs and everything, and it includes the ones in your cross-appeal. So I don't – I think all of those issues are joined, so to speak, and that if we are going to deal with Georgia here, it affects everybody across the board. Am I wrong about that? I understand what you're saying, but that's what you said in your summary of argument, and I thought, oh, good, we are limited in what we have to look at here. But then when I read your argument – and I'm trying to be fair to you because you're agreeing from what's covered – I read it as being broader, page 39 of your record. Your Honor, I believe you are correct with regard to the 657 patent because Facebook had done this in two patents, in the 657 patent and the 245 patent. I was only speaking with regard to the 245 patent, which is the one that we were arguing about today and that Facebook had said they were going to submit on the papers for the remainder of the arguments for the other patents. Yes, but just considering on the papers, the issues are still before us. It doesn't matter to me whether you're – there's no difference whether you argue it or submit it on the papers. It's still an issue before us. It doesn't take it off the table, right? I think that's right, Your Honor. I'm not – look, the point I was trying to make and trying to find out if you agree with it is if we hold that any of the claims identified in the petitions filed after the one-year ban, if we hold that all of those claims were not before the PTO, so there's no decision from the PTO in your favor. On those claims, you lose. Not exactly, Your Honor. We still have claims that we prevailed on. It covers only a niche of the cross-appeal. It only covers a niche of the cross – of that appeal, which are some of the claims. I think it was – I don't have a – 19, 23, in that range of the patent. But the argument that the Patent Office made and that obviousness combination still applies to all the claims across the patent. So if the Patent Office's decision is upheld and the claims are found to be non-obvious, that should apply to all the arguments for all the claims across all the patents. And so this issue of – it's unfortunate, as Your Honor has said, in terms that this is where this issue of statutory interpretation, which seems to be of great import, is being litigated. But that would not be a loss for Windy City if it were to be overturned in that way upon the statute. One final question – and thank you very much. You've been very helpful – is do you think that the court, given – let's assume at the extreme that we feel that it's proper and appropriate for us to reach all of these issues – deference to a presidential opinion, all of the statutory constructions with regard to Joinder – would we not benefit from asking the PTO for its views on these matters even though it's neglected to intervene on its own accord? Do you have a reaction to that? Your Honor, my reaction is that as a patent lawyer, perhaps, but from my client's perspective, I don't know that it is really of any great import to my client whether or not the Patent Office weighs in on this issue. But perhaps as a patent lawyer, it makes some sense. I appreciate that very much. Thank you. Do you just want to comment on that last question? Sure. I would be happy to have the Patent Office weigh in here. I think it would be helpful for everyone so that you have a more fulsome record. But I think Your Honor still can find that this may not be the right case for that because you can rely on the waiver argument. I wasn't asking them to waive or not waive at the time of the POPR. The argument I'm talking about is the argument that they made in their opposition to our motion for Joinder. On appendix at page 7372 and appendix at 8148, patent owner acknowledges that in its opinion, the board has discretion to deny the motion for Joinder on our petition. They then received a ruling contrary because the board said yes, it is in fact joined. They didn't ask for rehearing. They never raised the issue below ever as to whether or not the Patent Office had discretion. The first time that issue was raised was in this appeal on the cross appeal. And so an issue not raised below is deemed waived. Can I just ask you for the citation in your blue brief where you preserved the waiver argument? Where is that in your brief? It wasn't in our blue brief because the issue of Joinder wasn't raised until the cross appeal. So it wasn't raised. And so in the yellow brief, it is in our yellow brief. And it's in our yellow brief. Yes, page 24 I guess. Correct, Your Honor. Exactly right. And then did they respond to that in gray? I'm sorry. There's so many issues in this case that I lost track. I don't know if they did respond. Not that I had seen one. Yeah, they did. Okay. Let me ask you related to the question of getting the Patent Office to use, which I think I agree with the Chief. I think we might benefit from doing that. If we do that, do we need to then give you two an opportunity to respond? Or are you comfortable with our just getting their views for the record? I always welcome an opportunity to help Your Honors and respond. But if Your Honors found that there was plenty of paper and you'd already heard enough from me, I would be fine with submitting on whatever the Patent Office has. Yeah, that's tricky. I don't know. I don't know what the Patent says to go that route. Because in the normal course, if the board had intervened, obviously, and obviously you think the board's going to be on your side, so it's more his shift than yours as to whether or not you'd want to respond. But it seems like regular order when the PTO is making an intervention or is intervening is that the parties get to react to that. And that was my only point. Because obviously I think they're going to be consistent with proponent, but I wouldn't want to waive all rights to comment if all of a sudden he came in and said something contrary. Your offer to help us was certainly appreciated. I appreciate that, Your Honors. All right. We really appreciate your time, Your Honors. Well, thank you both very much. And I realize this may not have gone the way you expected. But one, trust that you had very extensive briefing on all of Merit's issues. And all of the arguments will be considered. So don't feel like you forfeited anything by the arguments today. But you both were very helpful. We appreciate it, Your Honors. Thank you very much. We may yet decide the merits of some time in the future. And we would appreciate that, too, Your Honor. All right. The case is submitted.